IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEROLD GRIFFIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-3121 |
| | § | |
| CITY OF SUGAR LAND, TEXAS, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jerold Griffin ("Griffin"), brings this action against defendants, the City of Sugar Land, Texas, and Officer Joshua Young ("Young"), Officer Matthew Shockey ("Shockey"), and Officer Lorenzo Jones ("Jones"), in their individual capacities, under 42 U.S.C. § 1983 for violation of civil rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution arising from plaintiff's arrest on September 23, 2016, and for assault and battery under state law. Pending before the court is Defendants' Motion to Dismiss for Failure to State a Claim ("Defendants' Motion to Dismiss") (Docket Entry No. 8). For the reasons explained below, defendants' motion to dismiss will be granted.

# I.  **Standard of Review**

Defendants seek dismissal of all the claims asserted against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.[1]  Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.  To defeat a motion to dismiss pursuant to Rule 12(b)(6) a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965).  "The plausibility standard is not akin to a 'probability

---

[1]Defendants' Motion to Dismiss, Docket Entry No. 8, p. 1.  All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 127 S. Ct. at 1966). Moreover, the court does not accept as true legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1950.

When ruling on a 12(b)(6) motion the court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted). See also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007) ("other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, [include] documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

Plaintiff has attached to and incorporated by reference into his First Amended Original Complaint video recordings of his arrest made by body cameras worn by Young and Shockey.[2] "In deciding a motion to dismiss, a court may consider video evidence attached as an exhibit to the complaint; when doing so, 'the court is not

---

[2]Plaintiff's 1st Amended Original Complaint, Docket Entry No. 7, p. 3 ¶ 9 (citing Exhibit 1, video of the incident).

required to favor plaintiff's allegations over the video evidence.'" Scott v. White, No. 1:16-CV-1287-RP, 2018 WL 2014093, * 1 (W.D. Tex. April 30, 2018) (quoting Hartman v. Walker, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam)). The standard for adopting video evidence over a plaintiff's allegations is, nevertheless, "a demanding one: a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account." Id. (quoting Darden v. City of Fort Worth, Texas, 880 F.3d 722, 730 (5th Cir. 2018)). See also Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Defendants have requested that the court take judicial notice of Sugar Land Code of Ordinances §§ 5-2, 5-3, and 5-4 establishing offenses for any person to be in a park between sunset and sunrise when the park is closed to the public.[3] Courts can take judicial notice of city ordinances. See H. B. Zachry Co. v. Waller Creek, Ltd. (In re Waller Creek, Ltd.), 867 F.2d 228, 238 n. 14 (5th Cir. 1989) (taking judicial notice of city ordinance as a legislative fact). Accordingly, the court takes judicial notice of Sugar Land Code of Ordinances § 5-2, 5-3, and 5-4.

---

[3]Defendants' Motion to Dismiss, Docket Entry No. 8, p. 12 ¶ 10.

## II.  **Plaintiffs' Factual and Legal Allegations**

Griffin alleges that on the evening of September 23, 2016, while sitting in Mayfield Park in Sugar Land, Texas, Sugar Land police officers Young and Shockey approached him to ask why he was there after dark.[4]  Griffin alleges that Jones arrived soon thereafter as backup, and that Young advised him "being at the park was a violation of city ordinance."[5]  Griffin alleges that Young then asked him for identification which he promptly provided,[6] that Young checked his "identification and background through his squad car's computers, and found no warrants,"[7] and that after further questioning, the officers released him indicating that "it was okay for him to be at the park."[8]  Griffin alleges that as the officers were leaving the park, Young asked him for consent to conduct a search and that he refused to consent.[9]  Griffin alleges that "Young then physically grabbed [him] without reason, and [he] pulled back, [and] then began to run away."[10]  Young, Shockey, and

---

[4]Plaintiff's 1st Amended Original Complaint, Docket Entry No. 7, p. 3 ¶ 9.

[5]Id. ¶ 10.

[6]Id.

[7]Id. ¶ 11.

[8]Id. ¶ 12.

[9]Id. ¶ 13.

[10]Id. at 4 ¶ 14.

Jones gave chase until Jones tackled Griffin.[11]  Griffin alleges that "[o]nce on the ground, one of the officers kicked [him], then punched [him],"[12] that he was "then ordered to give the officers his hands,"[13] that even though "[he] was not a threat to the officers,"[14] "Young kneed [him] in the side multiple times, causing further pain,"[15] and that "Young drew his pistol and pointed it at [his] face at point blank range [with t]he muzzle contact[ing] his forehead as Young yelled, 'give me your fucking hands or I'll shoot you in the face,' causing [him] to fear for his life."[16]  Griffin alleges that as a result he "suffered fractured ribs, a fractured eye socket, contusions, and abrasions . . . [and] has since suffered extreme fear, anxiety, and depression."[17]  Griffin alleges that although he was unarmed and the officers were unharmed,

> he was [] arrested and taken to jail where he was imprisoned for approximately four months until he was able to make bond[, he] was [] required to obtain legal assistance and forced to attend court dates and proceedings[,] . . . [until a] criminal court dismissed the criminal cases against [him] after the issue of illegal search and seizure was raised.[18]

---

[11]Id. ¶ 15.

[12]Id. 16.

[13]Id.

[14]Id.

[15]Id. ¶ 17.

[16]Id. ¶ 18.

[17]Id. ¶ 19.

[18]Id. ¶ 20.

Griffin also alleges that

> [t]he reports and clear body camera videos of the
> incident were reviewed by supervising officers and deemed
> by supervising officers to be consistent with Sugarland
> Police Department policy.  The supervising officers were
> the employees of the Sugarland Police Department who were
> designated to review such incidents of wrongful
> detention, arrest and excessive force.[19]

Citing 42 U.S.C. §§ 1983 and 1988, Griffin alleges that he

> was unlawfully detained, arrested and searched by
> defendant Young without consent, warrant, probable cause,
> reasonable suspicion, or any other lawful reason.  The
> force used by the individually named defendants was in
> great excess to the need to use such force and
> constituted an unreasonable seizure of [Griffin] and
> violated his due process rights under the 4th and 14th
> Amendment[s].    The defendants unlawfully detained
> [Griffin] in violation of the 4th and 14th Amendments.
> The defendants severely injured [Griffin], breaking his
> ribs and eye socket, as well as causing contusions and
> abrasions.[20]

Griffin alleges that

> [t]he City of Sugar Land's Police Department has a
> custom, policy, practice, and procedure of using
> excessive force on individuals and not disciplining or
> training officers adequately and is therefore liable
> under 42 U.S.C. Section 1983 and 1988.  The events and
> violations discussed above were ratified by the
> department when they determined that the officers'
> actions were consistent with department policy after
> reviewing the body camera footage.[21]

---

[19]Id. at 4-5 ¶ 21.

[20]Id. at 5 ¶ 25.

[21]Id. ¶ 26.

### III. **Analysis**

The defendants seek dismissal of Griffins' claims, arguing that Griffin has failed to allege facts capable showing (1) a claim under the 14th Amendment, or (2) claims under the 4th Amendment against either the City of Sugar Land or the individual officer defendants. The individual officer defendants also argue that Griffin's state law claims for assault and battery are barred by statutory immunity.

### A. **Federal Law Claims**

Defendants argue that Griffin's claims for violation the Fourteenth Amendment are subject to dismissal because Griffin "has not alleged facts which show any violation of the 14th Amendment. Claims of alleged unjustified arrest and use of excessive force during an arrest must be evaluated under the 4th Amendment standard."[22]

Griffin brings his federal law claims pursuant to 42 U.S.C. § 1983 which provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

---

[22]Defendants' Motion to Dismiss, Docket Entry No. 8, p. 9 ¶ 1.

> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Conner, 109 S. Ct. 1865, 1870 (1989) (quoting Baker v. McCollan, 99 S. Ct. 2689, 2694 n. 3 (1979)). To establish § 1983 liability, Griffin must prove that he suffered "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." Id.

"The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged." Graham, 109 S. Ct. at 1870 (quoting Baker, 99 S. Ct. at 2692). "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right." Id. at 1871. Griffin's allegations that he was "unlawfully detained, arrested and searched by defendant Young without consent, warrant, probable cause, reasonable suspicion, or any other lawful

reason,"[23] and that "[t]he force used by the individually named defendants was in great excess to the need to use such force and constituted an unreasonable seizure,"[24] raise claims that must be analyzed under the Fourth — not the Fourteenth — Amendment.  See Albright v. Oliver, 114 S. Ct. 807, 813-14 (1994) (the Fourteenth Amendment does not protect rights to be free from unreasonable search, arrest, or detention without probable cause).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The Fourth Amendment makes searches and seizures conducted outside the judicial process, i.e., without prior approval by judge or magistrate, unreasonable per se subject only to a few specifically established exceptions.  See Katz v. United States, 88 S. Ct. 507, 514 (1967).  For example, in Atwater v. City of Lago Vista, 121 S. Ct. 1536, 1557 (2001), the Supreme Court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  See also Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004) (holding that a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is

---

[23]Plaintiff's 1st Amended Original Complaint, Docket Entry No. 7, p. 5 ¶ 25.

[24]Id.

probable cause to believe that a criminal offense has been or is being committed)(citing <u>United States v. Watson</u>, 96 S. Ct. 820, 824-28, (1976), and <u>Brinegar v. United States</u>, 69 S. Ct. 1302, 1310-11 (1949)). A search incident to a lawful arrest may also be made without a search warrant. <u>See</u> <u>Weeks v. United States</u>, 34 S. Ct. 341, 344 (1914) (enunciating rule excluding evidence obtained in violation of the Fourth Amendment). This exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. <u>See</u> <u>Chimel v. State of California</u>, 89 S. Ct. 2034, 2040 (1969); <u>United States v. Robinson</u>, 94 S. Ct. 467, 473-76 (1973); <u>Arizona v. Gant</u>, 129 S. Ct. 1710, 1715-16 (2009). Moreover,

> *all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

<u>Graham</u>, 109 S. Ct. at 1871 (quoting <u>Tennessee v. Garner</u>, 105 S. Ct. 1694, 1699-1700 (1985) (Fourth Amendment governs claims for excessive force to effect arrest)). <u>See also</u> <u>Manuel v. City of Joliet</u>, 137 S. Ct. 911, 914-15 (2017) (Fourth Amendment governs claims for unlawful pretrial detention); <u>Gerstein v. Pugh</u>, 95 S. Ct. 854, 861-62 (1975) (Fourth Amendment requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest).

1. Plaintiff's Federal Law Claims Against the Individual
Officer Defendants are Subject to Dismissal

   (a) Applicable Law

   **(1) Official and Personal Liability**

Public officials like the individual defendants, Young, Shockey, and Jones may be sued pursuant to 42 U.S.C. § 1983 in either their official and/or their personal capacities. Hafer v. Melo, 112 S. Ct. 358, 361-63 (1991) (citing Kentucky v. Graham, 105 S. Ct. 3099, 3105-06 (1985)). The real party in interest in an official-capacity suit is the governmental entity, not the named official. Id. at 361 (citing Graham, 105 S. Ct. at 3105).

> [T]he distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device." . . . State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. . . . By contrast, officers sued in their personal capacity come to court as individuals.

Id. at 362. To state a personal-capacity claim under § 1983 plaintiff must allege that while acting under color of state law defendants were personally involved in the deprivation of a right secured by the laws or Constitution of the United States, or that their wrongful actions were causally connected to such a deprivation. James v. Texas Collin County, 535 F.3d 365, 373 (5th Cir. 2008).

## (2)  Qualified Immunity

Public officials sued in their personal capacities under § 1983 are shielded from suit by the doctrine of qualified immunity.  Saucier v. Katz, 121 S. Ct. 2151, 2155-56 (2001), overruled in part by Pearson v. Callahan, 129 S. Ct. 808, 812 (2009).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' . . . it is effectively lost if a case is erroneously permitted to go to trial."  Id. at 2156.  The doctrine of qualified immunity was created to balance the interest of compensating persons whose federally protected rights have been violated against the fear that personal liability might inhibit public officials in the discharge of their duties. See Johnston v. City of Houston, Texas, 14 F.3d 1056, 1059 (5th Cir. 1994).  The qualified immunity analysis involves a two-step inquiry:  (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct.  Saucier, 121 S. Ct. at 2156.  It is within the discretion of the district court to decide which of the two steps to address first.  Pearson, 129 S. Ct. at 818.  Courts examine each officer's actions independently to determine whether he or she is entitled to qualified immunity. Newman v. Guedry, 703 F.3d 757, 762 (5th Cir. 2012), cert. denied, 134 S. Ct. 162 (2013).  Once a defendant asserts qualified immunity, the burden shifts to the plaintiff to negate the defense of qualified immunity.  Id. at 761.

(b)  Application of the Law to the Allegations

## (1)  **Unreasonable Detention, Arrest, and Search**

Griffin alleges that he "was unlawfully detained, arrested and searched by defendant Young without consent, warrant, probable cause, reasonable suspicion, or any other lawful reason."[25] Asserting Griffin's allegations that he was unreasonably detained, arrested, and searched are facially deficient, Young, Shockey, and Jones argue that they should be dismissed because "[o]n the evening of September 23, 2016, Plaintiff admits he was in Mayfield Park in Sugar Land, Texas, after dark."[26]  Defendants argue that

> [t]he Court may take judicial notice of the City of Sugar Land Code of Ordinances § 5-2, 5-3, and § 5-4 which establish it is an offense for any person to be in the park between sunset and sunrise when it is closed to the public. {Exhibit 1}.  When Officer Young attempted to apply handcuffs to Plaintiff's wrist to arrest him for violating the City Ordinances, Plaintiff fled in an effort to avoid arrest.  {Doc. no. 7, ¶¶ 14-16}. Officers Young and Jones struggled with Plaintiff to apply handcuffs.  {Doc. n. 7, ¶¶ 14-18}.  Officer Young ultimately arrested Plaintiff.  Doc. n. 7, ¶¶ 20, 25}.[27]

Citing <u>Devenpeck</u>, 125 S. Ct. at 588, and <u>Atwater</u>, 121 S. Ct. at 1536, defendants argue that the allegations in Griffin's complaint are not capable of establishing that any defendant lacked legal justification to detain, arrest, or search him "because the complaint reveals that reasonable suspicion and probable cause

---

[25]<u>Id.</u>

[26]Defendants' Motion to Dismiss, Docket Entry No. 8, p. 12 ¶ 10.

[27]<u>Id.</u>

supported Plaintiff's detention, arrest, and search."[28] Defendants also argue that the claims asserted against defendant Shockey are subject to dismissal because Griffin "makes no factual allegation of an alleged unlawful detention, arrest, or search against [him]."[29]

In his response to defendants' motion Griffin argues that the officer defendants "used excessive force on [him] and illegally searched and detained him,"[30] restating verbatim the facts alleged in his complaint,[31] and arguing that "[t]he complaint has alleged, and the video backs up that all defendant officers worked together to illegally detain, arrest, and use excessive force on [him]."[32] But Griffin's response does not dispute either that his presence in a city park after dark constituted a criminal violation of the city ordinances cited by the defendants, or that his violation of those ordinances in the defendants' presence provided them both reasonable suspicion to detain him, and probable cause to arrest and search him incident to arrest.

---

[28]_Id._ at 14-15 ¶¶ 15-16.

[29]_Id._ at 15-16 ¶¶ 17-18.

[30]Plaintiff's Response to Defendants' Motion to Dismiss for Failure to State a Claim, Docket Entry No. 9, p. 1 ¶ 1.

[31]_Id._ at 3-4 ¶ 7.

[32]_Id._ at 7 ¶ 18.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck, 125 S. Ct. at 593 (citing Watson, 96 S. Ct. at 824-28, and Brinegar, 69 S. Ct. at 1310-11). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id. (citing Maryland v. Pringle, 124 S. Ct. 795, 800 (2003)). See also United States v. Levine, 80 F.3d 129, 132 (5th Cir.), cert. denied, 117 S. Ct. 83 (1996) ("Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."). In Atwater the Supreme Court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." 121 S. Ct. at 1557.

The City of Sugar Land's ordinances make it illegal for any person to be in a city park after dark at night. Both the factual allegations in Griffin's complaint and the video attached thereto show that Griffin was in Mayfield Park after dark and therefore that the individual officer defendants had reasonable suspicion to detain him, and probable cause to arrest him and conduct a search incident to arrest because Griffin committed the criminal offense

-16-

of being in the city park at night after dark in their presence. Griffin therefore fails to state a claim for violation of a right protected by the Fourth Amendment against any of the officer defendants arising from his detention, arrest, or search. Accordingly, defendants' motion to dismiss Griffin's claims against Young, Shockey, and Jones for unreasonable detention, arrest, and search in violation of the Fourth Amendment will be granted.

### (2) Excessive Use of Force

Griffin alleges that "the force used by the individually named defendants was in great excess to the need to use such force and constituted an unreasonable seizure of [him] and violated his due process rights under the 4th and 14th Amendment[s]."[33] Defendants argue that Griffin's excessive force claims should be dismissed because Griffin "has not alleged facts which show that Sergeant Shockey or Officer Jones used force against [him] that was excessive to the need or objectively unreasonable under the circumstances,"[34] and because they are entitled to qualified immunity on these claims.[35] Defendants argue that Griffin has failed to allege facts "which identify any basis for concluding

---

[33]Plaintiff's 1st Amended Original Complaint, Docket Entry No. 7, p. 5 ¶ 25.

[34]Defendants' Motion to Dismiss, Docket Entry No. 8, p. 17 ¶ 21.

[35]Id. at 18-19 ¶¶ 23-24.

-17-

that **every objective officer** would have been on notice that Sergeant Shockey's, Officer Jones['], or Officer Young's action was clearly unlawful under the factual circumstances alleged in Plaintiff's complaint."[36]

Griffin responds that "[t]he complaint has alleged, and the video backs up that all defendant officers worked together to illegally, detain, arrest, and use excessive force on [him],"[37] and that "[t]he defendants severely injured [him], breaking his ribs and eye socket, as well as causing contusions and abrasions.[38] In pertinent part Griffin alleges:

> 13. . . . Young asked [Griffin] for permission to conduct a search. [Griffin] did not consent to a search. At no time did any officer state [Griffin] was under arrest.

> 14. Young then physically grabbed [Griffin] without reason, and [Griffin] pulled back, then began to run away.

> 15. Young, Shockey, and Jones gave chase, until Jones tackled [Griffin].

> 16. Once on the ground, one of the officers kicked [Griffin], then punched [him. Griffin] was then ordered to give the officers his hands. At the time [Griffin] was not a threat to the officers.
> 17. Next, Young kneed [Griffin] in the side multiple times, causing further pain.

> 18. Then Young drew his pistol and point it any [Griffin's] fact at point blank range. The muzzle contacted [Griffin's] forehead as Young yelled,

---

[36]Id. at 19 ¶ 26.

[37]Plaintiff's Response to Defendants' Motion to Dismiss for Failure to State a Claim, Docket Entry No. 9, p. 7 ¶ 18.

[38]Id. at 8 ¶ 20.

"give me your fucking hands or I'll shoot you in the face," causing [Griffin] to fear for his life.

19. [Griffin] suffered fractured ribs, a fractured eye socket, contusions, and abrasions as a result of this attack. [Griffin] has since suffered extreme fear, anxiety, and depression. [Griffin] was unarmed. No officer suffered any injuries.[39]

### (i) The Force Used Was Not Clearly Excessive or Objectively Unreasonable

To state a § 1983 claim for use of excessive force in violation of the Fourth Amendment, Griffin must allege facts capable of showing that he suffered a seizure, and that he also suffered (1) an injury; (2) which resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of the force was objectively unreasonable. See Peña v. City of Rio Grande City, Texas, 879 F.3d 613, 619 (5th Cir. 2018).

Griffin has alleged facts capable of satisfying the first element of his excessive force cause of action, i.e., that he suffered injuries that resulted from the officers' use of force. At issue is whether Griffin has alleged facts capable of establishing the second and third elements of the offense, i.e., that the use of force was clearly excessive to the need, and the excessiveness of the force was objectively unreasonable. In Peña, 879 F.3d at 619, the Fifth Circuit stated that

---

[39]Plaintiff's 1st Amended Original Complaint, Docket Entry No. 7, pp. 3-4 ¶¶ 13-19.

> [t]he second and third elements collapse into a single objective-reasonableness inquiry, guided by the following <u>Graham</u> factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

<u>Id.</u> (citing <u>Scott v. Harris</u>, 127 S. Ct. 1769, 1776-77 (2007), and <u>Graham</u>, 109 S. Ct. at 1871) (citations omitted)). "[T]he question [is] whether the totality of the circumstances justified a particular" use of force. <u>Garner</u>, 105 S. Ct. at 1700. <u>See also</u> <u>Ikerd v. Blair</u>, 101 F.3d 430, 434 (5th Cir. 1996) ("The amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed."). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham</u>, 109 S. Ct. at 1872. Courts must allow for the fact that "police officers are often forced to make split second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." <u>Id.</u> <u>See also</u> <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2474 (2015) ("a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer"). Applying these factors the court concludes that Griffin's allegations are not sufficient to state a claim that the defendant officers used force that was clearly excessive to the need and that was objectively unreasonable under the circumstances.

The first factor is the severity of the offense. For the reasons stated in § III.A.1(b)(1), above, the court has already concluded that the factual allegations in Griffin's complaint establish both that the defendant officers had reasonable suspicion to detain Griffin, and probable cause to arrest him for committing a minor, nonviolent offense of violating city ordinances that prohibited him from being in the park at night. While "[t]he right to make an arrest necessarily carries with it the right to use some degree of force or threat to effect it," Nolen v. Minden Police Department, 48 F. App'x 481, *2 (5th Cir. 2002) (per curiam), the severity of the crime at issue weighs in favor of Griffin because the violation justified minimal force but the force used against him was more than minimal.

The second factor is whether Griffin posed an immediate threat to the officers or others, and the third factor is whether Griffin actively resisted arrest or attempted to evade arrest by flight. Taken together the factual allegations in Griffin's complaint and the video clearly show that the officers encountered at night Griffin alone by a table on which there were bottles of alcohol, and that Griffin complied with Young's request for identification. The video also clearly shows that the officers informed Griffin that his presence in the park at night was a violation of city ordinances, but that they would not selectively enforce those ordinances against him as long as he was not doing anything illegal

-21-

such as selling drugs. Young then asked Griffin if he would submit
to a search, and Griffin refused. Almost immediately after Griffin
refused Young's request for consent to search, Young took Griffin's
arm to arrest him. Griffin resisted by pulling away and fleeing in
an attempt to evade arrest. The alleged uses of force came after
Griffin fled and the officers gave chase. While Griffin did not
pose a threat to the officers before Young attempted to arrest him,
Griffin did pose a threat to the officers when he fled and they
gave chase. The second and third factors thus weigh in favor of a
use of force.

Griffin does not expressly allege that Shockey used any force
against him. Instead, Griffin alleges that when he fled the
officers gave chase, Jones tackled him, and one of three officer
defendants punched and kicked him and ordered him to give the
officers his hands. Griffin alleges that Young kneed him in the
side multiple times, drew his pistol, and held it against Griffin's
face threatening Griffin and yelling for Griffin to give Young his
hands. Griffin also alleges that he was not a threat to the
officers, but the video clearly shows otherwise. Although the
video shows that the officers spoke with Griffin for some time
before Young attempted to arrest him and he fled, the officers had
not checked Griffin for weapons. Because the video shows that
Griffin fled after Young's attempt to arrest him, it was neither
clearly excessive nor objectively unreasonable for the officers to

give chase and for Jones to tackle Griffin in order to stop him from fleeing. Id. (recognizing that "[t]he right to make an arrest necessarily carries with it the right to use some degree of force or threat to effect it," and finding that tackling a suspect fleeing to evade arrest was not unreasonable). Because the video shows that once he was on the ground, Griffin resisted and failed to comply with Young's instructions to give the officers his hands, it was neither clearly excessive nor objectively unreasonable for one of the officers to punch and kick Griffin or for Young to knee Griffin and point a gun at him in an effort to make Griffin stop resisting and submit to being handcuffed. The situation was tense and chaotic, and the officers could reasonably have feared for their safety because they had not checked Griffin for weapons and did not know that he was not armed. Moreover, this was a brief scuffle that lasted less than a minute, and Griffin does not allege that any officer used any force against him after he was subdued and handcuffed. The video shows that once Griffin was handcuffed and sitting in a police vehicle, the officers asked Griffin if he needed medical attention and called for paramedics. Accordingly, the court concludes that Griffin has failed to allege facts capable of establishing that the defendant officers's use of force was either clearly excessive to the need or objectively unreasonable under the circumstances.

### (ii) The Officers Are Entitled to Qualified Immunity

Defendants argue that Griffin fails to allege facts which overcome the presumption that they are entitled to qualified immunity.[40] "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009) (citing McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc), cert. denied, 123 S. Ct. 1355 (2003)).

The defendant officers are entitled to qualified immunity on Griffin's excessive use of force claims unless all reasonable officers faced with their circumstances would have known that their conduct violated Griffin's constitutional right not to be subjected to excessive force. Saucier, 121 S. Ct. at 2156 (citing Anderson v. Creighton, 107 S. Ct. 3034, 3039 (1987)). The Fifth Circuit has observed that

> [a]llegations that an officer used excessive force in conducting a seizure complicates the Saucier inquiry. This complexity stems from having to make two "overlapping objective reasonableness inquir[ies]." . . . We must first answer the constitutional violation question by determining whether the officer's conduct met the Fourth Amendment's reasonableness requirement. . . If we find that the officer's conduct was not reasonable under the Fourth Amendment, we must then answer the qualified immunity question by determining whether the law was sufficiently clear that a reasonable officer

---

[40]Defendants' Motion to Dismiss, Docket Entry No. 8, pp. 18-19 ¶¶ 23-24.

would have known that his conduct violated the
constitution. In other words, at this second step, we
must ask the somewhat convoluted question of whether the
law lacked such clarity that it would be reasonable for
an officer to erroneously believe that his conduct was
reasonable. Despite any seeming similarity between these
two questions, they are distinct inquiries under <u>Saucier</u>,
and we must conduct them both.

<u>Lytle v. Bexar County, Texas</u>, 560 F.3d 404, 410 (5th Cir. 2009),
<u>cert. denied</u>, 130 S. Ct. 1896 (2010).

Griffin argues that the Fourth Amendment right to be free from
excessive force was clearly established in September of 2016 when
the defendants arrested him.[41] However, being clearly established
in an abstract sense does not generally provide sufficient notice;
in most cases, the law should be clear in a more particularized
sense related to the specific context in which the officers were
acting. <u>See</u> <u>Brosseau v. Haugen</u>, 125 S. Ct. 596, 599 (2004) (per
curiam); <u>Kinney v. Weaver</u>, 367 F.3d 337, 350 (5th Cir.) (en banc),
<u>cert. denied</u>, 125 S. Ct. 102 (2004). <u>See also</u> <u>Hope v. Pelzer</u>, 122
S. Ct. 2508, 2516 (2002) (recognizing that when the constitutional
violation is obvious, a materially similar case is unnecessary to
find the law clearly established). "Thus, while the right to be
free from excessive force is clearly established in a general
sense, the right to be free from the degree of force employed in a
particular situation may not have been clear to a reasonable
officer at the scene." <u>Lytle</u>, 560 F.3d at 417 (quoting <u>Bush v.</u>

---

[41]Plaintiff's Response to Defendants' Motion to Dismiss for
Failure to State a Claim, Docket Entry No. 9, p. 7 ¶ 17.

Strain, 513 F.3d 492, 502 (5th Cir. 2008)). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Turner v. Lieutenant Driver, 848 F.3d 678, 685 (5th Cir. 2017) (quoting Anderson, 107 S. Ct. at 3039).

Griffin has not cited and the court has not found any authority that would have provided a reasonable officer in the defendants' position fair notice that tackling a suspect who was fleeing to evade arrest, punching or kneeing the suspect several times, or pointing a gun at the suspect in an effort to gain control of his hands, constituted a violation of clearly established law in the particular circumstances at issue, i.e., when a fleeing suspect who had been tackled was actively resisting the officers, failing to obey the officers' clear and audible commands to give them his hands, and the officers did not know whether the suspect was armed. The court therefore concludes that the facts alleged by Griffin, even if true, would not permit a reasonable jury to find that any defendant officer was objectively unreasonable in believing that the specific force allegedly used against Griffin was not excessive under the circumstances. See Nolen, 48 F. App'x 481 at *2 (tackling a suspect fleeing to evade arrest was not unreasonable); Griggs v. Brewer, 841 F.3d 308, 315 (5th Cir. 2016) (finding no settled authority to put defendant on notice that it was unreasonable for an officer to use non-deadly

-26-

punches to gain control of the arms of a drunken, actively resisting suspect). Because Griffin has not cited and the court has not found settled authority putting the defendant officers on notice that the use of force alleged in this case violated Griffin's constitutional rights, the court concludes that the defendant officers are entitled to qualified immunity for Griffin's excessive force claims.

### (3) Failure to Intervene/ Bystander Liability

Plaintiff alleges that

> both Shockey and Jones saw [him] refuse consent to a search and did not intervene to prevent Young from unlawfully searching [him] even when there was time to intervene. Neither did any officer intervene to stop the excessive force used by the other officers or prevent the wrongful prosecution of [Griffin].[42]

To state a claim under § 1983 for an officer's failure to prevent another officer's violation of constitutional rights, a plaintiff must allege that (1) the bystanding officer knew that a fellow officer was violating an individual's constitutional rights, (2) had a reasonable opportunity to prevent violation, and (3) chose not to act. Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013), cert. denied, 134 S. Ct. 1935 (2014) (citing Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995)). Such liability is premised on the theory that by choosing not to intervene, a bystanding officer participates in his fellow officer's acts. Id.

---

[42]Plaintiff's 1st Amended Original Complaint, Docket Entry No. 7, p. 7 ¶ 31.

-27-

Griffin's failure to intervene claims are necessarily premised on allegations that Young violated his constitutional rights to be free from unreasonable search, excessive use of force, and wrongful prosecution. But for the reasons stated in §§ III.A.1(b)(1) and (2), above, the court has already concluded that Griffin has failed to allege facts capable of establishing that Young violated his constitutional rights to be free from unreasonable search, excessive use of force, and wrongful prosecution. Accordingly, Griffin has similarly failed to allege facts capable of establishing that Shockey or Jones wrongfully failed to intervene to prevent Young's a violation of his constitutional rights.

The court also concludes that Shockey and Jones are entitled to qualified immunity on these claims because Griffin has not cited and the court has not found settled authority that would have put Shockey and Jones on notice that the failure to intervene in Young's actions as alleged would have violated Griffin's constitutional rights.

Accordingly, the court concludes that Griffin has failed either to allege facts or to cite any authority capable of establishing that Shockey's or Jones' actions were not objectively reasonable in light of clearly established law, and that they are therefore entitled to qualified immunity. Accordingly, defendants' motion to dismiss Griffin's claims for failure to intervene/bystander liability will be granted.

2.  <u>Plaintiff's Federal Law Claims Against the City of Sugar
    Land Are Subject to Dismissal</u>

Having found that Griffin has failed to allege facts capable
of establishing that the defendant officers violated his
constitutional rights, the § 1983 claims that Griffin asserts
against the City of Sugar Land for maintaining a "custom, policy,
practice, and procedure of using excessive force on individuals and
not disciplining or training officers adequately,"[43] fail as a
matter of law.  See <u>Los Angeles v. Heller</u>, 106 S. Ct. 1571, 1573
(1986) (per curiam) (finding that if the officer inflicted no
constitutional injury, then the city could not be liable under
§ 1983); <u>Saenz v. Heldenfels Brothers, Inc.</u>, 183 F.3d 389, 392-93
(5th Cir. 1999) (recognizing that a municipality cannot be liable
when the individual officers cannot be held liable for an
underlying constitutional violation).  The court also concludes
that Griffin's § 1983 claims against the City of Sugar Land are
subject to dismissal for failure to allege facts capable of
establishing a municipal practice, custom, or policy caused a
violation of Griffin's constitutional rights.

Griffin alleges that

> [t]he City of Sugar Land's Police Department has a
> custom, policy, practice, and procedure of using
> excessive force on individuals and not disciplining or
> training officers adequately and is therefore liable
> under 42 U.S.C. Section 1983 and 1988.  The events and
> violations discussed above were ratified by the

---

[43]<u>Id.</u> at 5-6 ¶ 26.

department when they determined that the officers'
actions were consistent with department policy after
reviewing the body camera footage.[44]

Defendants argue that Griffin's claims against Sugar Land
should be dismissed because Griffin

> has not alleged facts which would show any
> unconstitutional City policy, or that the City's
> policymaker could be held responsible for a deprivation
> of [p]laintiff's rights. [Griffin] has not alleged facts
> which show that any policy of the City's policymaker
> actually caused a deprivation of [his] rights.[45]

In <u>Monell v. Department of Social Services of the City of
New York</u>, 98 S. Ct. 2018, 2035-36 (1978), the Supreme Court held
that municipalities are "persons" subject to suit under 42 U.S.C.
§ 1983, but that municipalities cannot he held liable on a
<u>respondeat superior</u> basis, <u>i.e.</u>, a municipality cannot be held
liable simply because one of its employees violated a person's
federal rights. For a municipality to be held liable under § 1983,
the municipality itself must cause the violation through its
policies. "[I]t is when execution of a government's policy or
custom, whether made by its lawmakers or by those whose edicts or
acts may fairly be said to represent official policy, inflicts the
injury that the government as an entity is responsible under
§ 1983." <u>Id.</u> at 2037-38.

---

[44]<u>Id.</u>

[45]Defendants' Motion to Dismiss, Docket Entry No. 8, p. 9 ¶ 3.

The ratification theory of municipal liability has been recognized by the Supreme Court. See City of St. Louis v. Praprotnik, 108 S. Ct. 915 (1988). There the Court stated:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

Id. at 926 (emphasis in original). The ratification theory is commonly used in the employment context.

> For example, if a school board — a policymaker under Monell — approves a superintendent's decision to transfer an outspoken teacher, knowing of the superintendent's retaliatory motive for doing so, the governmental entity itself may be liable; but if the school board lacks such awareness of the basis for the decision, it has not ratified the illegality and so the district itself is not liable.

Milam v. City of San Antonio, 113 F. App'x 622, 626 (5th Cir. 2004).

Regardless of the context in which it is raised, the ratification theory "is necessarily cabined in several ways . . . to prevent the ratification theory from becoming a theory of *respondeat superior*." Id. at 626-27. The mere failure to investigate a subordinate's decision does not amount to ratification. Id. at 627. And policymakers who simply go along with a subordinate's decision do not thereby vest final

policymaking authority in the subordinate.  Id.  The ratification theory must be applied with the understanding that "policymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates."  Id. Applying the ratification theory as plaintiffs propose in this case would turn it into *de facto respondeat superior.*

While the mere failure to investigate a police officer's conduct that allegedly violated a person's Fourth Amendment rights cannot amount to ratification, the converse must also be true:  The mere decision to investigate and exonerate also cannot amount to ratification. In the example mentioned above, a school board approved, or ratified, with full knowledge, its subordinate's decision to commit an act that violates a person's constitutional rights.  Because the school board acted with full knowledge and approved the conduct to be perpetrated by the school board's subordinate, the school board not only ratified such conduct, but the school board was complicit.  That makes the constitutional violation traceable to the policymaker.

Here, however, even assuming that the city's policymaker, i.e., the Chief of Police, reviewed the conduct of the defendant officers with respect to the incident about which Griffin complains, Griffin alleges that the policymaker reviewed that conduct after the fact, i.e., after the conduct had been committed

without approval. To hold the city liable because the policymaker concluded that the officers acted appropriately would convert liability through ratification into *respondeat-superior* liability. See id. at 627 ("It is not an easy fit because, at least facially, an illegal arrest that is completed without the involvement of any policymaker does not look like the typical situation in which a policymaker could 'approve[] [the employee's] decision and the basis for it' such that municipal policy can be said to have caused the harm."). See also Fraire v. City of Arlington, 957 F.2d 1268, 1278-79 (5th Cir.), cert. denied, 113 S. Ct. 462 (1992) (refusing to infer an unconstitutional custom or policy from a municipality's failure to discipline an officer for a single incident).

Griffin has notably failed to allege facts capable of establishing a pattern or practice of ratifying similar acts and has failed to cite any case in which a court has upheld a claim for ratification against a municipality under similar facts. The court therefore concludes that Griffin has failed to allege facts capable of establishing a § 1983 claim that the City of Sugar Land ratified the officers' conduct. Accordingly, the City of Sugar Land's motion to dismiss plaintiffs' § 1983 claim for ratification will be granted.

## B.   State Law Claims

Griffin asserts claims for assault against Young, Shockey, and Jones under Texas law.[46]  Defendants argue that Griffin's claims for assault against the individual defendants are statutorily barred by individual immunity under § 101.106(f) of the Texas Tort Claims Act (TTCA).[47]   Section 101.106(f) provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.   On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Section 101.106(f) "foreclose[s] suit against a governmental employee in his individual capacity if he was acting within the scope of employment."   Franka v. Velasquez, 332 S.W.3d 367, 381 (Tex. 2011).   The TTCA defines "scope of employment" to mean "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority. Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5).   An official acts within the scope of his authority if he is discharging the duties

_____

[46]Plaintiff's 1st Amended Original Complaint, Docket Entry No. 7, p. 6 ¶§ 27-28.

[47]Defendants' Motion to Dismiss, Docket Entry No. 8, p. 24 ¶¶ 40-42.

-34-

generally assigned to him. <u>Anderson v. Bessman</u>, 365 S.W.3d 119, 124 (Tex. App. Houston [1st Dist.] 2011, no pet.). An act is not within the general scope of employment if it was "within an independent course of conduct not intended by the employee to serve any purpose of the employer." <u>Alexander v. Walker</u>, 435 S.W.3d 789, 792 (Tex. 2014). Because there is no dispute that Griffin sued Sugar Land police officers Young, Shockey, and Jones, in their individual capacity for assault that occurred in the course and scope of their employment, Griffin's claims for assault are subject to dismissal under § 101.106(f). Accordingly, defendants' motion to dismiss Griffin's assault claims will be granted.

## IV. **Conclusions and Order**

For the reasons stated in § III.A.1, above, the court concludes that plaintiff has failed to allege facts stating federal law claims pursuant to 42 U.S.C. § 1983 against the individual officer defendants for unreasonable arrest, search, and prosecution, excessive use of force, and failure to intervene/bystander liability. For the reasons stated in § III.A.2, above, the court concludes that plaintiff has failed to allege facts stating federal law claims pursuant to 42 U.S.C. § 1983 against the City of Sugar Land. For the reasons stated in § III.B, above, the court concludes that plaintiff has failed to

allege facts stating claims against any of the defendants for violations of state law.

Accordingly, Defendants' Motion to Dismiss for Failure to State a Claim (Docket Entry No. 8) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 11th day of January, 2019.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE